and the court will proceed to our next case. Thank you, Your Honors. Thank you, Your Honors. Thank you. Before proceeding to the case of Monta Anderson v. United States, just for the record, the originally scheduled third case, Troyer v. National Futures Association, Appeal 2014-22 will be submitted on the briefs. So we will now turn to Appeal 19-12-57, Anderson v. United States, and we'll hear first from Mr. Fletterman. Good morning, Your Honors. May it please the court, Eric Fletterman for petitioner-appellant Monta Anderson. Your Honors, the Sixth Amendment guaranteed Mr. Anderson a lawyer who would fight for him in his plea negotiations. What he received instead was a lawyer who advised him to take a 20-year plea offer without investigating whether the government could prove its case for the death results enhancement. Mr. Anderson filed a 22-55 motion alleging ineffective assistance of counsel at plea negotiations, which the district court denied. This court should reverse for two reasons. First, Mr. Anderson alleged facts sufficient to show that his lawyer's lack of factual and legal investigation constituted deficient performance. And second, he alleged facts sufficient to show that that deficient performance prejudiced him in the outcome of his criminal case. Your Honors, separate from these two merits points, the government raises a procedural timeliness defense in its response brief. We explained thoroughly in our reply why that defense is forfeited, and this court need not address it. I intend to focus my argument time on the merits, but I'm happy to answer any questions the court may have on that procedural point. Turning to the merits and that deficient performance prong, Your Honors, a lawyer's performance is deficient when she fails to investigate a critical factual issue, and therefore fails to provide competent professional advice on that issue. In Gaylord, this court held that a lawyer's failure to investigate the factual basis for the death results enhancement for the charge, the same charge that Mr. Anderson is charged with here, that that lack of investigation constitutes deficient performance. This court in Gaylord reasoned that that's deficient performance because of the high legal standard that the government has to meet in order to make that death results enhancement stick. The court in Gaylord cited back to what the Supreme Court said in Barrage, which emphasized that for this death results enhancement, the government has to show that but for the drugs distributed by the defendant, whether those drugs were a but for cause of the victim's death. Your Honor, in some cases, that question is going to be straightforward, but in Gaylord, as here, that question requires a lot more factual investigation because where a victim has consumed multiple doses of drugs, the question becomes whether setting aside the drugs that the defendant distributed, would the victim have died anyway with the other drugs that he consumed? This court found in Gaylord that the lawyer's failure to investigate that factual basis, indeed, even lack of evidence on the record that the lawyer was aware of the high legal standard constituted deficient performance. Your Honor, that's exactly what we have here. There's- Mr. Futterman, let me ask you what troubles me about this case is that at least in most situations, the law allows parties to reach an agreed resolution of a case before they have looked under every rock, before they have resolved every issue. Obviously, that happens in civil litigation all the time. Maybe we feel a little less comfortable about it in criminal cases, but I'm trying to imagine a scenario in which the government has this 20-year offer on the table for the mandatory minimum, right? A mandatory minimum without the death results enhancement. And the lawyer says, well, no, I wanna look further into this. I wanna get more information. And the more information winds up convincing both the defense and the government. Now, the government has a really good case on the death results enhancement. 20 years is off the table. The government wants more. I assume then we might also be seeing an ineffective assistance challenge. Well, Your Honor, there's no evidence on the record that this 20-year plea deal was going to magically disappear if the defendant took a little more time to investigate the facts. Further, the defense lawyer- Maybe not, but I don't see anything that would prevent the government from saying, in essence, based on what we know now, here's what we're willing to do. But in essence, if the government's case gets stronger over time before trial, the government's perfectly entitled to take an offer off the table, right? Your Honor, at the time that the government made this plea offer, that death results enhancement was on the table. Like you mentioned, it features a 20-year mandatory minimum up to life. That's without the death results, right? Well, correct. That is without the death results. Your Honor, the death results enhancement, however, drove the plea negotiations here. With that death results enhancement on the table, Mr. Anderson was facing basically a guidelines-recommended life sentence. When he's faced with that choice, you're facing life, here's a plea deal to 20 years, as Mr. Anderson alleges in his petition. His lawyer said, basically, you'd better take this 20-year deal here. Your Honor, but the lawyer hadn't even investigated the critical facts of the case. Had she done so, had she even just consulted with a toxicologist to understand what the evidence in these reports showed and whether the government could meet its high burden of showing but for causation here, that death results enhancement may have gone off the table. And then, Your Honor, like you said, if that enhancement is off the table, he's still facing a mandatory minimum of 20 years because of his prior drug felony and the way the statute is written. However, this gets to what the Supreme Court was talking about in Lee, and this goes to the prejudice prong here. Your Honor, if you're starting out a criminal case and your lawyer has done very little factual investigation as to the charges that the government is alleging, and the government offers 20 years, but then you know that if this enhancement goes off the table, you're facing a 20-year sentence if you take it all the way to trial and lose without that enhancement. It would be perfectly rational to reject that plea deal and continue investigation to see whether you can chip away at the government's proof of the charges that it's trying to show. And Your Honors, this gets to the crucial point of what the guidelines would have been had this enhancement been off the table. Without the enhancement, as we discussed before, with the enhancement, he's facing guidelines of life. Very threatening. He's got very little leverage in plea negotiations. With that enhancement off the table, his guidelines range is looking at about 14 years to 17 and a half years. And granted, he's facing a mandatory minimum under the statute of 20 years, but Your Honor, since his guidelines range is gonna be under 20 years, that 20-year mandatory minimum becomes his likely maximum too without the enhancement on the table. And so Mr. Anderson here would effectively be faced with a choice had his lawyer done adequate investigation of, hey, do I take a 20-year plea deal now or do I take this all the way to trial where the likely result is 20 years anyway? Your Honor, that's what the Supreme Court explained and Lee would be a rational decision to make is to reject that plea deal and insist on going to trial. And this is a crucial point. The government tries to say that there's no prejudice here because the outcome of a hypothetical trial without the death results enhancement is the same as what he got with his plea deal. But that's not the question before the court here. The question before the court is whether, had defense counsel not performed efficiently, whether Mr. Anderson would have rejected the plea deal and insisted on going to trial. And Your Honors, if the likely outcome of a trial without the death results enhancement is the same thing that he pled to way before any investigation happened, then that absolutely shows prejudice because it shows that he should have had his, his lawyer should have conducted further investigation and determined whether the government could prove this charge. Your Honors, this is further emphasized by the fact that there are several co-defendants in this conspiracy case, all of whom received sentences far less than what Mr. Anderson received. Those sentences range from two years to five years. Meanwhile, Mr. Anderson is in prison for 20 years under his charge. It crucially, all of those co-defendants were charged under the same indictment. They were all indicted under the death results enhancement. And at some point in plea negotiations, they were all able to negotiate that away because as we've discussed, the death results enhancement carries that statutory mandatory minimum, which all the defendant's sentences fall under. And- All the other defendants downstream players in this distribution conspiracy? Your Honor, that's, a lot of that evidence is missing from the record that we have here. Generally, in discovery files and so forth, from what we can tell, perhaps yes. But Your Honor, is that- What I saw was that Mancini, or I think that's the name, was the target. And that was the fellow who directly supplied Reeder. But it was Anderson who was the upstream supplier to Mancini and onto Reeder. Is that right? Your Honor, that's potentially what the evidence would show. Again, this case terminated at such an early stage that a lot of this is not in the record and was never litigated in court. It's only what the government is alleging here. Your Honor, the reason, what I'm struggling with is that the reason it was terminated at such an early stage with a complete appellate waiver, except for ineffective assistance of counsel and a binding plea agreement, was because the government offered this mandatory minimum deal without the death enhancement, which sounds like a pretty good deal for somebody in Anderson's position at the time, particularly since you don't know yet what the toxicology reports will say. And you know that whatever the doses were from the other folks led him to think he didn't get enough of a kick. And so he sought more heroin and then winds up dead after he gets the supply from Anderson. Your Honor, it sounds like a pretty good deal if your lawyer doesn't investigate whether the government can meet its burden to prove this enhancement or not. The toxicology report says what it says. It said that he died of opiate intoxication. However, it ignores the fact that there are two different doses of heroin here. One completely unconnected to Mr. Anderson, and then the one that is allegedly connected to him. Further, it shows that Mr. Reeder already had some Benadryl in his system, which as toxicologist testimony in prior cases have shown, can aggravate the effects of heroin. Your Honor, that toxicology report provides enough support here to show that there's good reason to think Mr. Reeder might have died absent that second heroin dose here. And that's the question that wasn't investigated by the lawyer. And she admitted in her affidavit that she filed to the district court that she was incapable of understanding those toxicology reports, and that she didn't know what that medical evidence was. Your Honor, that's exactly the question that this court found to be deficient performance and prejudicial in plea negotiations in Gaylord. And that is the case here. Your Honors, I do see I'm running short on time. I had another question though. Mr. Anderson went through a series of lawyers. Some he hired and some were appointed, and the last one was court appointed, right? At the trial stage, that's correct, Your Honor. And there was no, none of the lawyers previously bothered with the toxicology report or anything like that? Talking about getting a medical expert? Not to my knowledge, Your Honor, and not reflected in the record. However, we don't know exactly when the plea negotiations kind of started up here and when that took place. What we do know is that the last lawyer, Ms. Schneiderhines, was the point person in this line for when the plea negotiations were taking place. That was when it was critical for the lawyer to investigate the facts and the legal basis behind it. There's no evidence in the record that she even saw the barrage case, saw this court's Hatfield case, realized what a high standard this is for the government to prove. Because, Your Honors, even if that toxicology investigation came back and said, inconclusive, we can't parse through these heroin doses and figure out whether one was a but-for cause or the other, then that's the government's problem because it's their burden to prove that his drugs were a but-for cause of the death here. And if that toxicology investigation came back inconclusive, that alone is reason for Mr. Anderson to reject this plea deal and go to trial because the worst he's facing at trial was the same prison sentence that he ultimately pled to way before this factual investigation took place. What's the statutory maximum without the death enhancement? Your Honor, the statutory maximum is up to life. However, like I said before, that likely guidelines range is below the statutory minimum of 20 years. And so that 20-year statutory minimum becomes his likely maximum sentence as well. Your Honors, he doesn't need to show certainly what that outcome would have been. At this stage, he only needs to show a reasonable probability of what that outcome would have been. Reasonable probability of a trial would have been a 20-year sentence without that enhancement. I see- Mr. Flutterman, if I could, if this case were remanded for a hearing, which is I suspect is what you would like, and counsel on the last counsel said again from her affidavit that she was granted permission to proceed without hiring a medical examiner because she had communicated that to the defendant. Your position would be that that alone will not carry the day for the government? Absolutely, Your Honor, because that's why we have the right to effective assistance of counsel at plea negotiations is because it's the lawyer's job to look into the law and to look into the facts as they relate to the law and determine whether there are viable legal defenses here. That affidavit Ms. Schneider-Hines filed is notably silent about what she told Mr. Anderson in that supposed conversation where he authorized her to proceed without hiring a medical examiner. We don't know whether she explained to him the importance and the high burden that the government had to meet to make this enhancement stick. And so, Your Honor- What if her testimony were to be that she explained the possibility of what the medical examiner could come back with that might be even favorable to the defendant or indicate that the government couldn't carry its burden? Could the defendant be competent enough to still say, go forward? Your Honor, if that's her testimony, if she gets up there on the stand in an evidentiary hearing and says that, hey, I researched the law, I explained to him thoroughly how important this could be and he regardless authorized me to proceed, then we're done. And he doesn't have a case, but that evidentiary hearing never happened and we don't have that testimony on the record. All we have here are some factual disputes and we have a case that was dismissed at the pleading stage without the benefit of that evidentiary hearing. In Gaylord, this court remanded for an evidentiary hearing and this court should do the same here. I appreciate your answer. Your time has expired, but you may have two minutes for rebuttal. I appreciate it, Your Honor. Thank you. All right, we'll now hear from Mr. Simpson. Thank you, Your Honor, and good morning. May it please the court. I'm Scott Simpson on behalf of the United States. I think it's important to start here with what is not at issue. The defendant admitted to selling heroin and he doesn't try to deny that now. Also, when he pleaded guilty in 2015, he had five prior convictions for possessing, manufacturing, or delivering drugs, and he doesn't challenge those priors here. In pleading guilty to the heroin charge, Anderson admitted that the government would be able to prove that the heroin he sold not only killed the one person, James Reader, but also he admitted that his heroin seriously injured two other people. The 2255 motion that's involved here in this appeal affects only one aspect of that overall admission, that is the resulting death. Anderson's 2255 motion does not affect his admission that he caused the serious injuries of the other two people. Anderson also does not deny what is, we think, ultimately, the most significant fact here, and that's the fact that Judge Hamilton brought up earlier, and that's the fact that because of his criminal history, Mr. Anderson faced a statutory minimum sentence of 20 years in prison, even without the death or serious injury enhancement. And that is exactly the sentence that his attorney negotiated for him. So here's the strategic decision that Anderson's attorney had to make. Either, number one, investigate the cause of James Reader's death further by engaging an expert, assuming the district court authorized that, and with that, also run the risk of getting an expert opinion, confirming that Mr. Reader would not have died, but for the heroin supplied by the defendant, or option two, advise Anderson to plead guilty in exchange for the very sentence he inevitably would have received, regardless of the cause of James Reader's death. Your Honors, I think the term commonly used for this kind of decision is no-brainer. Under Strickland, Anderson has to show, of course, both that his counsel's performance was deficient and that he suffered prejudice because of it. On the first element, and I emphasize these aspects of the standard because I think the defendant's briefs here don't state these standards quite as strongly as the courts have stated them. The court scrutiny here on the attorney's performance has to be highly deferential. A court has to evaluate the conduct from counsel's perspective at the time, and has to presume both that counsel's conduct was reasonable and that the defendant did not suffer prejudice. And as this court has said, a counsel's representation did not be perfect, not even very good. Indeed, not even very good to be constitutionally adequate. We believe Anderson received effective assistance in connection with this guilty plea, but even if the court thinks counsel was constitutionally deficient, there's no way Anderson could show any prejudice in light of his sentence. He received the sentence he inevitably would have received even without the death or serious injury enhancement, and that alone should preclude a finding of prejudice. And again, he admitted to selling the heroin, but not only that, but Anderson also does not argue that his attorney should have investigated further whether his heroin led to the serious injury of the other two people. That also independently should preclude a finding of prejudice. So any way you look at it, as the court has already observed here, Anderson got a very good deal. The ineffective assistance claim involved here cannot ultimately affect Anderson's sentence at all. Just a few words on the Anderson's argument that the district court should have held an evidentiary hearing. The standard of review on that argument  The court's decision not to hold a hearing was clearly not an abuse of discretion. The existing documentary record was and is sufficient to show that counsel provided effective assistance and certainly to show that Anderson was not prejudiced simply based on the plea agreement and Anderson's criminal history. Now, if I could add just a few words on the timeliness issue. We're not withdrawing that, but I'm sorry. Before you get into that, just so I understand, you're much more experienced at parsing the various paragraphs of 841 than I am, but- I wouldn't bet on that, Your Honor. With the serious injury admissions, he would have been what? A mandatory minimum of 30 years? As the statute existed at that time, Your Honor, which is what we have to look at, of course. Yeah, sorry. With that admission, I'm sorry, with the death or serious injury, he had... I believe it was mandatory life. If he had that- What about his name? I believe so. I believe it was mandatory life if he had both the prior convictions, which he did, and the death results enhancement. I believe that's mandatory life. And what is it now? 20? I believe that's right, Your Honor, but I'm afraid I've been focusing on- Anyway, it's not life any longer, whatever. I don't believe so. I don't believe so. So if I could, just a few words about the timeliness issue. It's important to notice here, to realize that Mr. Anderson did not file anything until more than three months after his deadline for filing a 2255 motion. And even then, what he filed was only a motion for extension of time. So the cause of action was effectively dead. We understand, I guess, at least I think I understand your argument, Mr. Simpson, but you agree this was forfeited in the district court? Your Honor, it is a difficult position to be in, and it definitely would have been better. It definitely would have been better to have raised it in district court. I think we do have a plausible argument that the district court's later actions in, we would say purporting to extend the deadline, could have caused the government to think that it would have been futile to raise the timeliness issue at that time. Well, given the legal resources of the United States Department of Justice, as compared to those of a pro se prisoner, it's a little hard to see this as an exceptional case calling for overlooking the forfeiture. I understand that, Your Honor. But actually we need to remember also though that he initially filed his motion for extension of time about three months after the deadline. Yes, he filed that pro se, but he pretty soon did have an attorney who entered an appearance on his behalf, and then filed a counsel motion for extension of time and a motion to withdraw. So he did for a time there have an attorney who actually was in error in relation to the deadline for filing a 2255 motion. Just a few comments finally, lastly about equitable tolling. We don't think this is an appropriate case for equitable tolling. The circumstances alleged by Mr. Anderson, such as limited access to a law library are simply common parts of prison life rather than extraordinary. Also, Mr. Anderson did not allege that those conditions had existed throughout the one year period. And finally, he failed to show that he had acted diligently during that period, simply coming in three months after the deadline after you'd had 15 months after his conviction became final. So thank you. Mr. Simpson, if I could ask you a question. Assuming there was a toxicology inquiry and it proved favorable on the question or at least raised a question as to whether his dose caused the death. And the defendant still goes ahead and pleads. And I know the argument about does it would have result in the same sentence or not. But would he be in prison having pled to the distribution with not having caused the death versus being in prison for having caused the death be in any way prejudicial to the defendant? And just to make sure I understand your honor, are you saying that the expert opinion would come out favorable to the defense? Yeah, defense in the sense that it wouldn't be clear that the second dose was the failed dose. So put aside mandatory minimums or maximums is there a prejudice that might attend a plea assuming another plea goes forward where one he goes to prison for distribution or he goes to prison for distribution which caused the death of another. Would that in any way impact future release? I'm just reflecting on what the possible prejudice issue might be here. I don't think that would cause an issue, your honor. I think if he pleaded guilty to the distribution and based on his criminal history, I think he would get 20 years. I would find it hard to imagine that the supervised release would change. I don't think there would be any prejudice. Again, his prison sentence would be the same as what he got under the existing plea. Who would make that decision? The Bureau of Prisons, early release? Well, the Bureau of Prisons can release approximately the rule of thumb that we have in mind is generally prisoners can spend as little as 75% of their time of their prison, of their sentence in prison. And that's based on good time credits and really good time credits depend on how they behave in prison. I think that goes to Judge Flom's question though. Does the death have anything to do with it? Not that I know of, your honor, not that I know of. I think it's just the death, I don't know, might have some impact on where he's in prison, I don't know. The fact that he pleaded guilty to contributing to a death might have some impact on where he's in prison, I don't know. But I can't, as far as I know, it would not have any impact on his good time credits when the Bureau of Prisons would release him. Thank you, Mr. Simpson. Thank you, your honor. So we urge the court to affirm. All right, Mr. Flutterman. Yes, your honors. With regard to that question that was just being discussed, the First Step Act did amend this statute and it brought the mandatory minimum. Death results enhancement aside, if you have a prior drug felony before you were facing 20 years, First Step Act, now you're only facing 15 years. So if he had pled, and your honor, we didn't brief this issue, so I don't wanna get too much into it, but addressing the court's question before, if he had pled to something not involving the death, then that statute has now been amended to bring that mandatory minimum down by five years. Potentially that would give him grounds for a motion for compassionate release now. With regard to the strategic decision not to investigate here, your honors, this argument about how an investigation into the toxicology might have shown him guilty, you can use that same argument in any ineffective assistance of counsel case. That argument alone cannot carry the day as far as excusing counsel's ineffectiveness in investigating these toxicology reports. There were facts in discovery that suggested that this would have been a fruitful line of investigation and the lawyer did nothing and instead took the government's plea offer to 20 years here. Your honors. Mr. Fletterman, would it be your position then that any time faced with a toxicology situation such as the question of whether the last dose was the fatal dose, that every time defense counsel fails to explore that with a lay defendant would be per se ineffective assistance of counsel? Not necessarily, your honor. And I would not go so far as to say in every case, but these cases are fact specific. In Gaylord, I see I'm out of time if I may briefly. You may continue. Your honor, in Gaylord, there was a victim who consumed multiple doses of drugs, only one of which was connected to the defendant. Here, there's a victim who consumed multiple doses of drugs, only one of which is connected to the defendant. In this case, like in Gaylord, it should be remanded for an evidentiary hearing to explore those questions further. In other cases, that toxicology investigation question is going to be more straightforward. But in this case, as in Gaylord, it's not, and it requires an evidentiary hearing on the ineffective assistance of counsel claim. We ask this court to reverse and remand for an evidentiary hearing. Thank you. All right. Thank you, Mr. Fletterman. Thank you, Mr. Simpson. The case is taken under advisement.